**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| BASHE ABDI YOUSUF, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:04 CV 1360 (LMB/JFA) |
| | ) | |
| MOHAMED ALI SAMANTAR, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA ............................................................................................................. i

I.     the act of state doctrine does not bar plaintiffs' claims .......................................9

II.    the statute of limitations was tolled until samantar entered the united states in 1997...........................................................................................................................11

     A.    The Court Has Ruled that the Statute of Limitations Can Be Equitably Tolled ........................................................................................................11

     B.    It Is Undisputed that Plaintiffs Could Not Have Brought Suit in Italy .................13

     C.    There is No Genuine Dispute as to Whether the Extraordinary Circumstances in Somalia Justify Equitable Tolling of the Statute of Limitations .........................................................................................................16

     D.    Plaintiffs Timely Filed Their ATS and TVPA Claims with the Court ....................18

III.    DEFENDANT'S CHALLENGES TO PLAINTIFFS' CLAIMS ARE MERITLESS...........................................................................................................20

     A.    The Record Supports Plaintiffs Claims for Extrajudicial Killing and Attempted Extrajudicial Killing..............................................................................20

     B.    Plaintiffs May Pursue Their Claims of Torture ......................................................23

     C.    The Facts and the Law Support Plaintiffs' Claim for Arbitrary Detention ............27

     D.    Crimes Against Humanity and War Crimes are Firmly Established as Violations of International Law .................................................................................28

IV.    Defendant is Not Entitled to Summary Judgment on Plaintiffs' Secondary Liability Claim .................................................................................................................29

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970)...............................................................................................9

*Aldana v. DelMonte Fresh Produce, N.A., Inc.*,
   416 F.3d 1242 (11th Cir. 2005) .............................................................................26

*Aldana v. DelMonte Fresh Produce, N.A., Inc.*
   452 F.3d 1284 (11th Cir. 2006) (Barkett, J., dissenting) .......................................26

*Arce v. Garcia*,
   434 F.3d 1254 (11th Cir. 2006) ...............................................................12, 18, 19

*Aziz v. Alcolac*,
   658 F.3d 388 (2011)...............................................................................23, 29, 30

*Banco Nacional de Cuba v. Sabbatino*,
   376 U.S. 398 (1964)......................................................................................9, 10

*Bowoto v. Chevron Corp.*,
   557 F. Supp. 2d 1080 (N.D. Cal. 2008), *aff'd* 621 F.3d 1116 (9th Cir. 2010) .......26

*Burnett v. New York Cent. R.R. Co.*,
   380 U.S. 424 (1965)................................................................................................19

*Cabello v. Fernandez-Larios*,
   402 F.3d 1148 (11th Cir. 2005) .......................................................12, 24, 25, 28

*Cabiri v. Assassie-Gyimah*,
   921 F. Supp. 1189 (S.D.N.Y. 1996) (finding acts of torture occurring from 1986 to
   1991 actionable)...............................................................................................24, 25

*Cada v. Baxter Healthcare Corp.*,
   920 F.2d 446 (7th Cir. 1991) ................................................................................19

*Carolina Conduit Sys., Inc. v. MasTec N. Am., In.*,
   No. 3:11CV133, 2011 WL 5042082 (E.D. Va. Oct. 24, 2011) ...................8, 22, 29

*Chavez v. Carranza*,
   559 F.3d 486 (6th Cir. 2009) ...................................................................... passim

*de Sanchez v. Banco Central de Nicaragua*,
   770 F.2d 1385 (5th Cir. 1985) ..............................................................................26

*Doe v. Karadzic*,
    No. 93 Civ. 0878 (PKL), 2000 WL 763851 (S.D.N.Y. June 13, 2000)...................................12

*Doe v. Liu Qi*,
    349 F. Supp. 2d 1258 (N.D. Cal. 2004) ...............................................................................27

*Doe v. Qi*,
    349 F. Supp. 2d 1258(N.D. Cal. 2004) ................................................................................25

*Doe v. Saravia*,
    348 F. Supp. 2d 1112 (E.D. Cal. 2004)...........................................................................20, 28

*Enaharo v. Abubakar*,
    408 F.3d 877 (7th Cir. 2005) ...............................................................................................21

*Filartiga v. Pena-Irala*,
    630 F.2d 876 (2d Cir. 1980).....................................................................................10, 24, 25

*Gonzales-Vera v. Kissinger*,
    No. 02-02240, 2004 WL 5584378 (D.D.C. Sept. 17, 2004)................................................24

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996) .........................................................................................12, 21

*Hilao v. Estate of Marcos*,
    25 F.3d 1467 (9th Cir. 1994) ...............................................................................................20

*In re Family Dollar FLSA Litig.*,
    637 F.3d 508 (4th Cir. 2011) .................................................................................................7

*In re Yamashita*,
    327 U.S. 1 (1946)................................................................................................................28

*Jama v. I.N.S.*,
    22 F. Supp. 2d 353 (D.N.J. 1998) .......................................................................................26

*Jean v. Dorelien*,
    431 F.3d 776 (11th Cir. 2005) .............................................................................................12

*Kadic v. Karadz I*,
    70 F.3d 232 (2d Cir. 1995).............................................................................................11, 28

*News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*,
    597 F.3d 570 (4th Cir. 2010) ...........................................................................................8, 21

*Paul v. Avril*,
    901 F. Supp. 330 (S.D. Fla. 1994) ......................................................................................27

*Pine Ridge Coal Co. v. Local 8377, United Mine Workers of Am.*,
   187 F.3d 415 (4th Cir. 1999) .......................................................................8

*Pollard v. United States*,
   166 Fed. Appx. 674 (4th Cir. Feb. 2, 2006)..........................................8, 20

*Socop-Gonzales v. I.N.S.*,
   272 F.3d 1176 (9th Cir. 2001) ...................................................................19

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004).......................................................................... passim

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
   318 F.3d 592 (4th Cir. 2003) .....................................................................17

*Tachiona v. Mugabe*,
   216 F. Supp. 2d 262 (S.D.N.Y. 2002), *rev'd on other grounds*, 386 F.3d 205 (2d Cir.
   2004) ...........................................................................................................25

*United States v. Buchanan*,
   638 F.3d 448 (4th Cir. 2011) .....................................................................19

*W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l*,
   493 U.S. 400 (1990).....................................................................................9

*Xuncax v. Gramajo*,
   886 F. Supp. 162 (D. Mass. 1995) ................................................24, 25, 27

## STATUTES

28 U.S.C. § 1350.................................................................................................11

28 U.S.C. § 1350(b), note ..................................................................................13

Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note 2(c))....................11

## OTHER AUTHORITIES

Civil Rule 56(B)....................................................................................................1

FED. R. CIV. P. 56(c)(1)...........................................................................9, 28, 30

FED. R. CIV. P. 56(f)........................................................................1, 8, 11, 20

Federal Rule of Civil Procedure 12(b)(6) ............................................................7

Federal Rule of Civil Procedure Rule 56........................................................ passim

S. Rep. 102-249 (1991)......................................................................................24

Plaintiffs Bashe Abdi Yousuf, Mohamed Aziz Deria, John Doe I and John Doe II ("Plaintiffs"), through undersigned counsel, respectfully submit this memorandum in opposition to Defendant Mohamed Ali Samantar's ("Defendant") motion for summary judgment.  In his instant motion, Defendant repeats the same legal standard and case law on which he based his motion to dismiss, ignoring the Court's prior directive to develop a factual record to support dismissal.  The facts developed in the record – none of which are cited by Defendant – militate against summary judgment in Defendant's favor.  To the contrary, the record establishes that Plaintiffs claims are timely, thus entitling Plaintiffs to summary judgment on that issue.  Defendant's summary judgment motion is nothing other than a repackaged version of his motion to dismiss and should therefore be denied in its entirety.  Furthermore, the Court should enter summary judgment in favor of Plaintiffs on Defendant's affirmative defense of statute of limitations.  *See* FED. R. CIV. P. 56(f).

## COUNTER-STATEMENT OF MATERIAL FACTS

In accordance with Local Civil Rule 56(B), Plaintiffs submit the following counter-statement of facts.  All but one of the "facts" set forth in Defendant's Statement of Material Facts are taken from a self-serving affidavit executed by Defendant on December 1, 2004 – long before any discovery was taken in this case.  Plaintiffs' Counter-Statement of Facts responds to Defendant's omissions and inaccuracies, and indicates material facts that Defendant cannot dispute or as to which there is a genuine dispute that must be litigated.

1.      In 1970, Defendant Samantar became commander of the Somali Armed Forces, which include the Somali Army, Air Force, and Marines.  Defendant achieved the rank of Lieutenant-General, the highest rank in the Somali military, and was the only person to hold that

rank.  Deposition of Mohamed Ali Samantar ("Samantar Dep.") at 150:4-8, 14-16; 151-17-18;

41:10-21, relevant excerpts attached hereto as Ex. A.

2.      Defendant became Minister of Defense of Somalia in 1971.  Throughout his

tenure as Minister of Defense, Defendant retained his role as Commander of the Somali Armed

Forces.  Ex. A, Samantar Dep. at 159:5-9; 159:12.  In his capacity as Minister of Defense and

Commander of the Somali Armed Forces, Defendant received reports from subordinates,

including the Commander of the Military Police, commonly known as the Red Berets, and had

"daily contact" with the Somali National Army.  Ex. A, Samantar Dep. at 199:7-11; 203:2-

6:203:12; Deposition of David Rawson ("Rawson Dep.) at 202:18:22, excerpts attached hereto as

Ex. B.  Contrary to Defendant's Statement of Facts ¶ 2, Samantar's tenure as Minister of Defense

was unbroken from the time he was appointed in 1970 or 1971 until his appointment as Prime

Minister in 1987.  Ex. A, Samantar Dep. at 133:3-6.

3.      Plaintiffs and their decedents are native of Somalia and members of the Isaaq

clan.  Deposition of Bashe Abdi Yousuf ("Yousuf Dep.") at 8:17-20; 32:9-11, relevant excerpts

attached hereto as Ex. C. Deposition of Mohamed Aziz Deria ("Deria Dep.") at 21:9-12; 33:20-

34:2, relevant excerpts attached hereto as Ex. D; Deposition of John Doe I ("Doe I Dep.") at

32:9-11; 31: 8-10, relevant excerpts attached hereto as Ex. E; Deposition of John Doe II ("Doe II

Dep.") at 13:10-11; 30:19-21, relevant excerpts attached hereto as Ex. F

4.      In 1981, while Defendant was Minister of Defense and Commander of the Somali

Armed Forces, Plaintiff Bashe Abdi Yousuf was arrested by members of the National Security

Service.  Ex. A, Samantar Dep. at 150:4-8; 150:14-16; Ex. C, Yousuf Dep. at 98:8-15; 119:5-

120:5.  After his arrest, Plaintiff Yousuf was questioned while tied in the "MiG" position, with

his arms and legs behind his back a V-shape, sometimes with a heavy object on his back, and

waterboarded five or six times.  Ex. C, Yousuf Dep. at 210:16-213:4; 214:5-7; 17-22; 211:12-16.

This treatment caused Yousuf a great deal of pain.  *Id.* at 213:3-4.

5.     In 1984, during Defendant's tenure as Somali Minister of Defense and

Commander of the Somali armed forces, Plaintiff John Doe I and his brothers, James Doe I and

James Doe II, were arrested by members of the Somali military after being falsely accused of

providing food to members of the Somali National Movement.  Ex. A, Samantar Dep. at 150:4-8;

150:14-16; 159:5-9, 12; Ex. E, Doe I Dep. at 49:4-9; 55:6-56:16.

6.     Plaintiff John Doe I was imprisoned for a total of eight days in an overcrowded,

windowless, unlit room, and was given nothing to eat or drink other than a small portion of rice

once a day.  Ex. E, Doe I Dep. at 82:12-83:18.

7.     Contrary to Defendant's suggestion, neither John Doe I nor his brothers, James

Doe I and James Doe II, were accorded a trial vested with the "judicial guarantees which are

recognized as indispensible by civilized peoples."  Def's Motion at 15.  Plaintiff Doe I and his

brothers had no access to an attorney before or during the time they were tried, convicted and

sentenced in 1984.  Ex. E, Doe I Dep. at 89:5-8.  The presiding officer in the court where

Plaintiff Doe I and his brothers were tried was dressed in military attire, as was the guard in the

courtroom.  *Id.* at 88:13-17.  Two soldiers testified falsely against Plaintiff Doe I and his

brothers, after which the presiding officer questioned Plaintiff Doe I.  *Id.* at 90:2-91:10.  Plaintiff

John Doe I and his brothers James Doe I and James Doe II, along with approximately 80 others,

were convicted.  *Id.* at 96:2-11.  Some of those convicted, including James Doe I and James Doe

II, were taken away in a truck to be executed.  *Id.* at 97:20-98:2.

8.     In June 1988, around that time that the Somali National Movement ("SNM")

invaded Hargeisa, Plaintiff John Doe II was arrested by members of the Somali military police

while he was ill and hospitalized, and was taken to a military base.  Ex. F, Doe II Dep. at 97:13-21; 98:9-99:19; 100:11-12.  Soon after his arrest, and without being formally charged or tried, he was tied to other prisoners, taken outside, shot and left for dead under the bodies of executed prisoners.  *Id.* at 107:20-108:4; 109:1-21; 110:1-10; 112:15-19.  The place where John Doe II was taken to be executed in June 1988 is called Malko Dur-Duro, which is adjacent to the Somali military base in Hargeisa.  *Id.* at 165:19-166:7.  Members of the Somali military used Malko Dur-Duro as a place to conduct executions and bury the bodies in mass graves.  Deposition of Ibrahim Abdullahi ("Abdullahi Dep.") at 20:3-22:22; 24:8-13, relevant excerpts attached hereto as Ex. G.

9.     On or about June 1, 1988, armed members of the Somali military seized Mohamed Deria, and later, Mustafa Deria, from their family home in Hargeisa.  They were never seen again.  Declaration of Sabah Mohamed, attached hereto as Ex. H

10.     While Defendant has denied that he had any role in military affairs after he became Prime Minister in 1987, the record shows that in June 1998, while the Somali military was battling the SNM in Hargeisa, Defendant took control of the military command center in Mogadishu, then moved north to Hargeisa as supervisory commander.  Ex. B, Rawson Dep. at 198:17-199:6; 199:13-200:23.  After the SNM invaded Hargeisa on May 31, 1988, Somali military aircraft bombed the city and strafed civilians on the ground.  Deposition of Trusten Frank Crigler ("Crigler Dep.) at 94:11-16; 96:2-7, relevant excerpts attached hereto as Ex. I.  Hargeisa was destroyed by the Somali armed forces in those attacks, with houses and buildings destroyed, and the bodies of civilians, including women and children, were "all over" the town and marketplace.  Ex. G, Abdullahi Dep. at 41:1-6, 8; 41:10-42:4.  Estimates of the number of civilians killed during the bombing of Hargeisa range from 5,000 to at least 25,000.  Ambassador

4

James Keough Bishop, Expert Report on the Human Rights Conditions in Somali during the 1980s ("Bishop Report") at 7, attached hereto as Ex. J.

11.     Despite Defendant's denial that he ordered the bombing of Hargeisa or ever admitted that he ordered the bombing, his denials are contradicted by Albert Short, who acknowledged that Defendant gave an interview to the BBC during which Defendant claimed to have been in control of Hargeisa while it was being bombed by Somali military.  Ex. A, Samantar Dep. at 253:2-4, 6-7, 12; Deposition of Albert Short ("Short Dep.") at 132:19-133:18, relevant excerpts attached hereto as Ex. K.

12.     During the period between 1987 and 1990, the Somali government committed human rights abuses against the population  Ex. I, Crigler Dep. at 76:14-16.  In particular, beginning in late May 1988, human rights abuses were visited on noncombatant civilians in northern Somalia, primarily upon members of the Isaaq tribe.  *Id.* at 93:11-14.  Defendant has acknowledged that these human rights abuses occurred.  *Id.* at 104:1-13.  Among the human rights abuses committed by the Barre regime under which Defendant served are extrajudicial killing, torture, violations of due process, detention of prisoners of conscience and those opposed to the regime.  Ex. I, Bishop Report at 4.  In northern Somalia, approximately 5,000 unarmed civilian Isaaqs were "purposefully murdered" by members of the Somali military between March 1988 and March 1989, despite offering no resistance or posing any immediate danger to these forces.  *Id.* at 9.

13.     The Somali Constitution in effect from 1979 to 1991 prohibited torture, arbitrary detention, and, by implication, barred extrajudicial killings.  Declaration of Martin R. Ganzglass, Plaintiffs' Opposition to Defendant's Motion to Dismiss Second Amended Complaint [Dkt. 143], Ex. 1 at ¶14, attached hereto as Ex. L.

5

14.     After the end of his tenure as Prime Minister in the latter half of 1990, Defendant

immediately left Somalia, eventually settling in Italy.  Ex. A, Samantar Dep. at 406:1-3; 453:17-

454:3; 455:17-456:1.  While Defendant resided in Italy, he held no employment, paid no taxes,

his rent was paid by the Italian government, and he does not know whether he was listed in a

Rome telephone directory.  Ex. A, Samantar Dep. at 456:13-14; 469:11-16; 470:10-12, 17-20.

15.     Plaintiffs did not learn that Defendant had resided in Italy until years after this

lawsuit was filed, with Plaintiff Deria unsuccessfully searching for Defendant in the 1990s.  Ex.

C, Yousuf Dep. at 360:3-20; Ex. D, Deria Dep. at 138:4-9, 12-20; Ex. F, Doe II Dep. at 167:2-4.

16.     Italian law does not have any statute similar to the Alien Tort Statute or the

Torture Victim Protection Act.  Italian law does not provide civil causes of action for torture,

extrajudicial killing, attempted extrajudicial killing, cruel, inhuman or degrading treatment,

arbitrary detention, crimes against humanity, or war crimes.  During the period 1991 to 1997, an

Italian court would not have exercised jurisdiction over claims by foreigners against a former

high-ranking official of a foreign government such as Defendant.  Deposition of Paola Gaeta

("Gaeta Dep.") at 16:5-17:13, relevant excerpts attached hereto as Ex. M; Paola Gaeta, Expert

Report on the Italian Legal System at 5 ("Gaeta Report") and CV, attached hereto as Ex. N;

Deposition of Cosimo Rucellai ("Rucellai Dep.") at 58:10-59:6; 59:19-24, 60:1-3; 146:23-147:6-

16; 148:11-149:5; 151:14, relevant excerpts attached hereto as Ex. O

17.     From the fall of the Barre regime in 1991 until at least 1998, the judicial system in

the Republic of Somaliland was ill-equipped to handle cases involving human rights violations,

as it was staffed by unqualified personnel and plagued by corruption.  Martin R. Ganzglass,

Expert Report as to the Court System in Somalia ("Ganzglass Report") at 10, attached hereto as

Ex. P.  During the same period, the judicial system in other parts of Somalia was more chaotic

than the one in Somaliland, and thus was unable to handle cases involving human rights

violations. *Id.* at 11.

18.     After the fall of the Barre regime and until at least 1998, Plaintiffs who attempted

to bring a human rights lawsuit against members of the Barre regime would have risked serious

reprisals against them, their family members, and their witnesses from former members of the

Red Berets and National Security Service, who committed many of the human rights violations

suffered by the Isaaq and other tribes.  Ex. P, Ganzglass Report at 11-12.

19.     Plaintiffs John Doe I and John Doe II both resided in Somalia from 1991 to 1998,

and continue to do so.  Ex. F, Doe II Dep. at 167:8-15; Ex. E, Doe I Dep. at 32:9-11.  Plaintiff

Deria had family in Hargeisa during at least some portion of that same period.  Ex. D, Aziz Dep.

at 157:13-16.  Several witnesses who provided deposition testimony on behalf of Plaintiffs have

lived in Somalia since at least 1991, if not their entire lives.  Deposition of Jama Ali Hassan

("Hassan Dep.") at 8:14-9:8, relevant excerpts attached hereto as Ex. Q; Deposition of Yousuf

Sharmarke ("Sharmarke Dep.") at 10:22-11:2, relevant excerpts attached hereto as Ex. R;

Deposition of Abdi Mahmoud Saban ("Saban Dep.") at 226:19-227:5, 7-12; 228:3-15, relevant

excerpts attached hereto as Ex. S; Ex. G, Abdullahi Dep. at 81:7-10.

## ARGUMENT

Defendant, as the party seeking summary judgment, bears the burden of setting forth

evidence showing that "there is no genuine dispute as to any material fact" and he "is entitled to

judgment as a matter of law."  *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir.

2011).[1]  Rule 56 requires the Court to view "the *record as a whole* and in the light most

---

[1] Notably, this standard appears nowhere in Defendant's motion.  Instead, Defendant
relies upon the standard for a motion to dismiss for failure to state a claim pursuant to Federal

favorable to the nonmoving party" to determine whether there exists a genuine dispute as to any material fact. *Pine Ridge Coal Co. v. Local 8377, United Mine Workers of Am.*, 187 F.3d 415, 419 (4th Cir. 1999) (emphasis added). In considering a motion for summary judgment, "the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Hunt v. Cromartie*, 526 U.S. 541 (1999)).

To prevail on a motion for summary judgment, the moving party must demonstrate the absence of a genuinely disputed fact by "'citing to particular parts of materials in the record' or by 'showing that the materials do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Carolina Conduit Sys., Inc. v. MasTec N. Am., In.*, No. 3:11CV133, 2011 WL 5042082, at *2 (E.D. Va. Oct. 24, 2011) (quoting FED. R. CIV. P. 56(c)(1)). If the moving party makes the proper showing, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." *Pine Ridge Coal*, 187 F.3d at 421 (quoting FED. R. CIV. P. 56). The burden *will not* shift if the moving party fails to meet his initial burden, and summary judgment must be denied. *Pollard v. United States*, 166 Fed. Appx. 674, 678 (4th Cir. Feb. 2, 2006) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) (holding that nonmoving party was not required to submit opposing affidavits when moving party failed to meet its initial burden on summary judgment)). Furthermore, Rule 56 was amended last year to explicitly allow a court to grant summary judgment for the nonmoving party "after giving notice and a reasonable time to decide." FED. R. CIV. P. 56(f).

---

Rule of Civil Procedure 12(b)(6). *See, e.g.*, Def.'s Motion at 14 ("Even if a prohibition against extrajudicial killing were actionable under the ATS . . . the facts set out in the Complaint do not describe a violation of this proscription.").

Defendant makes no effort to meet his burden.  He cites to no part of the record developed in discovery, ignores the facts that cut against him, and relies upon the wrong legal standard.  But even if the Court concludes that Defendant has satisfied his burden, thereby shifting the burden to Plaintiffs, they have set forth specific facts through citation "to particular parts of materials in the record" which show there are genuine disputes for trial in this matter. FED. R. CIV. P. 56(c)(1).  Consequently, his motion for summary judgment must be denied.

## I.      THE ACT OF STATE DOCTRINE DOES NOT BAR PLAINTIFFS' CLAIMS

Defendant's assertion that he is entitled to summary judgment because the Act of State doctrine bars Plaintiffs' claims is meritless.  In support of his assertion, Defendant merely presents the same arguments – still devoid of any factual support – as in his motion to dismiss, which the Court correctly denied.  *Compare* Def.'s Motion at 2-4 *with* Dkt. No. 139 at 5-7. Defendant offers no new arguments or evidence in support of his contention.  Having thus failed to meet his burden under Rule 56, summary judgment must be denied on Defendant's Act of State doctrine defense.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970) (summary judgment denied when moving party fails to meet its burden).

Defendant's argument on this score ignores the fundamental principle of the Act of State doctrine enunciated by the U.S. Supreme Court:  the doctrine arises only when the court must decide "the effect of official action by a foreign sovereign."  *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 404, 406 (1990).  This case presents no such determination by the Court.  Indeed, the facts developed in this case make clear that the Act of State doctrine poses no bar to Plaintiffs' claims.

As a threshold matter, even if torture and extrajudicial killing could be considered "official action," the factors discussed by the U.S. Supreme Court in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964), all counsel against application of the doctrine in this case:

(1) the degree to which consensus has been reached regarding a particular area of international law; (2) the potential significance of deciding the issue on foreign relations of the United States; and (3) whether the government responsible for the act in question is still in power.  As discussed in Part III Plaintiffs' claims are all based on established norms of international law.  Moreover, the U.S. government has unequivocally sided with Plaintiffs regarding the second and third factors, stating that:

> In the absence of a recognized government [in Somalia] authorized either to assert or waive Defendant's immunity or to opine on whether the Defendant's alleged actions were taken in an official capacity, the Department of State has determined that such immunity should not be recognized here.  That determination has taken into account the potential impact of such a decision on the foreign relations interests of the United States.

*See* Statement of Interest of the United States of America, Feb. 14, 2011 at 9, attached hereto as Ex. T.  On October 24, 2011, after Defendant appealed the denial of his common-law immunity defense, the Executive Branch reiterated its position in an amicus brief in support of Plaintiffs-Appellees at the Fourth Circuit.  *See* Brief of the United States as Amicus Curiae Supporting Appellees at 5, 16-17, Yousuf v. Samantar, No. 11-1479 (4th Cir. Oct. 24, 2011), attached hereto as Ex. U.  Finally, the third *Sabbatino* factor is satisfied here, as the government in which Defendant served ceased to exist more than twenty years ago.  *See Sabbatino*, 376 U.S. at 428 ("The balance of relevant considerations may also be shifted if the government which perpetrated the challenged act of state is no longer in existence . . . .").

Furthermore, and for the reasons discussed in more detail in Part III Defendant's acts - all of which violated the Somali Constitution - cannot be considered "official action" by a foreign sovereign.  *See Filartiga v. Pena-Irala*, 630 F.2d 876, 889-90 (2d Cir. 1980) ("[W]e doubt whether action by a state official in violation of the Constitution and laws of the Republic of

10

Paraguay . . . could properly be characterized as an act of state."); *see also Kadic v. Karadz I*, 70

F.3d 232, 250 (2d Cir. 1995) ("[I]t would be a rare case in which the act of state doctrine

precluded suit under [the ATS].").

In light of the Executive Branch's position, and the complete absence of any

contradictory evidence offered by Defendant, it is clear that the Act of State doctrine does not bar

Plaintiffs' claims and summary judgment must be denied.

## II.   THE STATUTE OF LIMITATIONS WAS TOLLED UNTIL SAMANTAR ENTERED THE UNITED STATES IN 1997

Defendant's argument that Plaintiffs' claims are time-barred also fails, and Plaintiffs are

entitled to summary judgment on this affirmative defense.  The parties agree that the Torture

Victim Protection Act ("TVPA") has a limitations period of ten years, *see* Pub. L. No. 102-256,

106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note 2(c)), and that courts generally have

applied the same ten-year statute of limitations to claims brought under the Alien Tort Statute

("ATS"), 28 U.S.C. § 1350.  *See, e.g.*, *Chavez v. Carranza*, 559 F.3d 486, 492 (6th Cir. 2009)

(finding that ten-year limitations period applies to ATS claims and collecting cases finding

same).  Defendant maintains, however, that (1) equitable tolling does not apply to TVPA or ATS

claims; and (2) even if it did, there is no basis to toll it here because Defendant alleges that he

lived openly in Italy from 1991-1997 and was amenable to suit in that country.  Defendant is

wrong on both counts.  Instead, the law and the record demonstrate that summary judgment is

warranted on behalf of Plaintiffs, as there is no genuine issue in dispute regarding whether their

claims are time-barred.  *See* FED. R. CIV. P. 56(f).

### A.   The Court Has Ruled that the Statute of Limitations Can Be Equitably Tolled

It is well-established that equitable tolling is appropriate for TVPA and ATS claims,

especially when a defendant resides outside the United States.  *See, e.g.*, *Chavez*, 559 F.3d at

11

493-94 (affirming district court's determination that equitable tolling was justified where claims filed over nine years after end of statutory limitations period); *Arce v. Garcia*, 434 F.3d 1254, 1264 (11th Cir. 2006) (finding plaintiffs' claims under the TVPA and ATS were timely because they were filed within ten years of defendants' entry into the United States and the statute of limitations had been tolled prior to that time); *Jean v. Dorelien*, 431 F.3d 776, 779-80 (11th Cir. 2005) ("The statute of limitations must be tolled at least until [defendant] entered the United States and personal jurisdiction could be obtained over him."); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005) (same); *Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir. 1996) (holding TVPA "is subject to equitable tolling, including for periods in which the defendant is absent from the jurisdiction") (citing S. Rep. No. 249, at 11 (1991)); *Doe v. Karadzic*, No. 93 Civ. 0878 (PKL), 2000 WL 763851, at *1 n.3 (S.D.N.Y. June 13, 2000) (same). Defendant has not cited a single case to contradict this well-established line of authority.

Indeed, the Court *already* ruled that equitable tolling may be applied to TVPA and ATS claims. At the April 1, 2011 hearing on Defendant's Motion to Dismiss and Motion for Reconsideration, in response to a direct question from Defendant's counsel, the Court stated:

> *I've found that equitable tolling does apply to these statutes* but that the evidence developed during discovery may result in a finding that this case is time-barred, all right? I can't make that decision at this point. The facts are not before the Court.

Tr. of Motions Hearing, Apr. 1, 2011, at 8:14-18, relevant excerpts attached hereto as Ex. V (emphasis added).

The Court therefore not only dismissed Defendant's first statute of limitations argument, but also made it abundantly clear that Defendant could prevail on his other limitation arguments only by presenting additional facts at summary judgment. Perhaps because the record contains no facts that support his position, Defendant chose to ignore the Court's directive.

12

**B.    It Is Undisputed that Plaintiffs Could Not Have Brought Suit in Italy**

The assertions that make up Defendant's argument that the statute of limitations should not be equitably tolled in this case center on his residence in Italy from 1991-1997.  Defendant makes this contention despite the clear language of the TVPA, which provides that plaintiffs are required to exhaust remedies by bringing suit "in the place in which the conduct giving rise to the claim occurred."  28 U.S.C. § 1350(b), note.  Of course, none of the conduct giving rise to Plaintiffs' claims occurred in Italy.  Notwithstanding this legal hurdle, Defendant maintains that the Court should consider his stint in Italy as part of the statute of limitations.  In support of that theory, Defendant relies upon a single phrase in a Senate Report, which states that the statute of limitations runs "during the time the defendant was absent from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff, provided that the remedy…is *adequate and available*."  S. Rep. No. 102-249, 1991 WL 258662, at *9 (emphasis added), attached hereto as Ex. W; Def.'s Motion at 8.  Even if the Court concludes that this snippet of legislative history is controlling, the record shows that Defendant has not demonstrated that Italy provided an adequate and available remedy.

Defendant first maintains that he lived "openly" in Italy, and thus Plaintiffs had the requisite opportunity to bring suit there.  This contention has no support in the record.  Defendant's sole evidentiary support that he lived "openly" is the self-serving affidavit he executed in 2004 and filed with his March 29, 2007 Motion to Dismiss.  *See* Def.'s Statement of Material Facts at ¶ 2; Dkt. No. 90 at 18.  Discovery showed this allegation to be untrue.  In his deposition, Defendant testified that while he resided in Italy, (1) he did not have a job; (2) he paid no taxes; (3) his rent was paid by the Italian government; and (4) he was uncertain whether his name was listed in a Rome telephone directory.  SOF ¶ 13.  Thus, Defendant presented no evidence that he lived openly in Italy, and nothing to demonstrate that anyone could have

13

discovered that he resided in Italy during this time.  In addition, Defendant has offered no other

evidence, such as news articles or other public reports, to indicate that Plaintiffs would have any

reason to know or believe he was residing in Italy.  To the contrary, Plaintiffs have offered

*unrebutted* evidence that they did *not* know of Defendant's Italian residence until after he moved

to the United States and this lawsuit was commenced.  SOF ¶14.  Plaintiff Deria made efforts to

search for Defendant and other Barre regime officials in the 1990s, but was unable to locate

Defendant.  *Id.*  Defendant has put forth no evidence to substantiate his claim that he lived

"openly" in Italy.

Second, even if Defendant's Italian residency could be construed as "open," Defendant

has failed to demonstrate that Italian law would have provided an adequate remedy for Plaintiffs.

Defendant has set forth no facts or credible testimony that would support his contention that

Italian law would have provided "adequate and available" relief.  Defendant relies on the cursory

and later discredited affidavit of Cosimo Rucellai ("Rucellai"), who stated that Defendant could

have been sued under Italian law for the damages Plaintiffs suffered.  *See* Jan. 7, 2005 Affidavit

of Cosimo Rucellai at ¶¶ 4-6, attached hereto as Ex. X.  But that affidavit cites no cases, no

statutes that were in effect from 1991 to 1997, or other objective evidence to illustrate the scope

of these putative causes of action, rendering the affidavit unreliable.

Tellingly, Defendant's motion makes no mention of Rucellai's deposition testimony,

during which Rucellai admitted that he knew little, if anything, about human rights, and

described his areas of expertise as corporate law, including mergers and acquisitions, structured

finance, and securitization.  Ex. O, Rucellai Dep. at 16:5-15; 30:14-22.  Under direct questioning

and under oath, Rucellai openly speculated about Plaintiffs' ability to bring their claims under

the Italian legal system.  After admitting that there exists no Italian law specifically addressing

14

torture, Rucellai testified that perhaps the Plaintiffs could have sued instead for the crime of "very serious injuries." *Id.* at 148:23149:2. However, Rucellai was unable to offer any support for his assumption that this cause of action would have been available to Plaintiffs, nor was he able to testify as to the statute of limitations for "very serious injuries," offering varying possibilities of 10, 12 or 15 years. *Id.* at 146:23-147:6-16; 148:11-149:5; 151:14. When asked to provide the statute of limitations under Italian law for arbitrary detention, Rucellai said he would have to consult the Italian Penal Code because he did not know the answer. *Id.* at 158:23-159:5. Further, although Rucellai opined that Article 4 of the Italian Civil Code would provide a basis for jurisdiction over Defendant, he provided no pre-1997 case law to support his contention and he admitted that he has never litigated or heard of a case in which Article 4 was used to sue a former foreign official defendant in an Italian court for acts that occurred outside of Italy. *Id.* at 20:25-36:20. Rucellai's testimony not only fails to meet Defendant's burden of showing an available and adequate forum, but is unreliable and should be excluded in its entirety.[2]

In contrast to the unsupported testimony of Rucellai, Plaintiffs proved definitively that no civil cause of action was available under Italian law, as it existed in the period 1991 to 1997, for torture, extrajudicial killing, attempted extrajudicial killing, cruel, inhuman or degrading treatment, arbitrary detention, crimes against humanity or war crimes. SOF ¶ 15 Professor Paola Gaeta, the Director of the Geneva Academy of International Humanitarian Law and Human Rights, and who has taught, researched and written about international criminal and humanitarian law since 1998,[3] testified that it is a "fantasy" to have expected Somali nationals to take on the

_____

[2] Plaintiffs' Motion in Limine to Exclude the Proffered Expert Testimony of Cosimo Rucellai [Dkt. No. 259] was filed on November 21, 2011.

[3] *See* Paola Gaeta, Expert Report on the Italian Legal System ("Gaeta Report") and CV, attached hereto as Ex. M.

"impossible mission" of coming to Italy to sue Defendant when no known cause of action was available to them. Ex. M, Gaeta Dep. at 50:12-24. Moreover, Defendant has never rebutted Professor Gaeta's opinion that Italian law, as reflected in decisions from Italy's highest court, the Court of Cassation, would have granted him sovereign immunity for the claims at issue here. *See* Ex. N, Gaeta Report at 5. Plaintiffs could not have brought suit against Defendant in Italy, and thus the statute of limitations should be tolled for the period 1991 to 1997.

### C. There is No Genuine Dispute as to Whether the Extraordinary Circumstances in Somalia Justify Equitable Tolling of the Statute of Limitations

Defendant asserts that the conditions in Somalia after the fall of the Barre regime do not entitle Plaintiffs to tolling of the statute of limitations, yet again rehashing the arguments from his unsuccessful motion to dismiss. *Compare* Def.'s Motion at 9-10 *with* Dkt. No. 139 at 18-20. Defendant is still wrong, as the record developed in this case shows that the situation in Somalia was far too chaotic through at least 1997 for Plaintiffs to have brought suit there.[4]

Even as late as 1998, the judicial system in the Republic of Somaliland was ill-equipped to handle cases involving human rights violations, as it was staffed by unqualified personnel and plagued by corruption. SOF ¶ 16 Moreover, even if that judicial system could have handled such a case, it is questionable that any judgment rendered by a Somaliland court would be enforceable in the United States, as the United States does not recognize the Somaliland government. *Id.* The judicial system in other parts of Somalia was even more chaotic than the one in Somaliland, making it impossible for Plaintiffs to have brought a similar lawsuit in any other part of that country. *Id.*

---

[4] Defendant tellingly makes no assertion that Somali law provided an adequate remedy for Plaintiffs, nor could he, as the record provides no support for such an assertion.

Even if some court somewhere Somalia was capable of adjudicating Plaintiffs' claims, the record shows that Plaintiffs would have risked serious reprisals against them, their family members and any potential witnesses by the former military and intelligence officials who committed many of the human rights violations against the Isaaq and other tribes. SOF ¶ 17. Perhaps at most risk are the John Doe Plaintiffs, both of whom have resided in Somaliland since at least 1991 – contrary to Defendant's suggestion that John Doe I is the only plaintiff known to have resided there in the 1990s. Def.'s Motion at 9. As Defendant well knows, Plaintiff John Doe II has lived in Hargeisa, Somaliland, since 1991, and John Doe I had never traveled outside of Somalia prior to his 2011 deposition. SOF ¶ 18 Plaintiff Deria also had family in Somaliland during at least part of the 1990s. *Id.* Four of the witnesses deposed on behalf of Plaintiffs have lived in Somalia since at least 1991, if not their entire lives. *Id.*

In contrast to Plaintiffs, Defendant has set forth no *facts* suggesting that fears of reprisals against Plaintiffs or their family members in Somalia in the 1990s were unwarranted, thus failing to meet his burden under Rule 56. Defendant only offers the affidavit of Alessandro Campo, a purported "expert on Somali law" who Defendant has never disclosed as an expert witness nor offered for deposition, and who was not identified on Defendant's trial witness list. Without offering any substantive basis, Campo "opines" that a Somali bringing a human rights claim against a former official in the Barre administration would have no fear of reprisal against himself or a family member. *See* Def.'s Mot. at 10. Such an opinion by an "expert" who was never disclosed, whose qualifications are untested and who will not testify at trial should be disregarded by the Court. *See, e.g.*, *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 598-99 (4th Cir. 2003) (affirming district court's exclusion of undisclosed expert opinion).

17

Absent any record evidence to support his arguments, Defendant turns to the statute's legislative history, arguing that the U.S. Senate did not contemplate tolling "based on a plaintiff's personal circumstances except where the plaintiff was himself 'imprisoned or otherwise incapacitated.'"  Def.'s Motion at 9 (citing S. Rep. No. 102-249, at *11).  Defendant, however, neglects to note that his quote was taken from an "[i]llustrative, but not exhaustive" list of circumstances that would warrant tolling.  *See* Ex. W, S. Rpt. at *9.

Thus, the circumstances on which a plaintiff's personal circumstances would warrant tolling are not so limited as Defendant asserts.  Indeed, federal courts have tolled the statutes of limitations where, as here, the extraordinary violence and danger in the home country prohibit filing of human rights lawsuits.  *See, e.g.*, *Chavez v. Carranza*, 559 F.3d 486, 493 (6th Cir. 2009) (affirming district court's application of equitable tolling where "widespread human rights abuses were carried out by the Salvadoran military against civilians during the country's civil war" and "plaintiffs feared reprisals against themselves or their family members"); *Arce v. Garcia*, 434 F.3d 1254, 1262 (11th Cir. 2006) ("Justice may also require tolling where both the plaintiff and the defendant reside in the United States but where the situation in the home state nonetheless remains such that the fair administration of justice would be impossible, even in United States Courts.").

### D.        Plaintiffs Timely Filed Their ATS and TVPA Claims with the Court

Because the record plainly establishes that Plaintiffs could not have brought suit prior to Defendant's 1997 entry into the United States, Defendant makes a last-ditch argument that Plaintiffs waited too long to bring suit.  Defendant asserts that Plaintiffs are entitled only to "a reasonable period with the exercise of diligence" to file suit, but does not specify what might be considered a "reasonable period."  Def.'s Mot. at 10.  Defendant merely suggests that the seven years that elapsed between Defendant's entry into the United States in 1997 and the filing of this

18

lawsuit in 2004 is not a "reasonable period." *Id.* Defendant principally relies upon the age-discrimination case, *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1991), to support his contention.

The approach urged by Defendant has been rejected by the U.S. Supreme Court. *See Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 435 (1965). There, the U.S. Supreme Court observed that tolling the limitations period for a "reasonable time" after an event that stops the clock "would create uncertainty" as to the length of the limitations period would not serve the "policies of certainty and uniformity" promoted by statutes of limitations. *Id.*; *see also Socop-Gonzales v. I.N.S.*, 272 F.3d 1176, 1196 (9th Cir. 2001) (noting that to shorten the prescribed limitation period could be viewed as a judicial usurpation of "congressional authority [by] toll[ing] and then rewrit[ing] the statute of limitations by substituting its own subjective view of how much time a plaintiff reasonably need[s] to file suit"). The U.S. Court of Appeals for the Fourth Circuit also recently reaffirmed this principle:

> Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.

*United States v. Buchanan*, 638 F.3d 448, 457 (4th Cir. 2011) (quoting *United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991)).

Finally, Defendant ignores that courts applying equitable tolling to the TVPA have consistently tolled for the full ten-year period after the end of the tolling period. *See Chavez*, 559 F.3d at 493-94 (affirming district court's determination that equitable tolling was justified and that claims were timely filed over nine years after end of limitations period); *Arce*, 434 F.3d at 1264 (finding plaintiffs' claims under the TVPA and ATS were timely because they were filed within ten years of defendants' entry into the United States and the statute of limitations had

19

been tolled prior to that time); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1142 (E.D. Cal. 2004)

(tolling statute of limitations for 10 years because El Salvador could not provide a "fair, honest

and credible forum" for claims stemming from acts occurring in 1980).  Plaintiffs' claims were

filed within seven years of Defendant's entry into the United States and are therefore timely.

The Court should deny Defendant's motion and enter summary judgment in favor of Plaintiffs.

*See* Fed. R. Civ. P. 56(f).

### III.    DEFENDANT'S CHALLENGES TO PLAINTIFFS' CLAIMS ARE MERITLESS

Consistent with the approach taken throughout his motion for summary judgment,

Defendant attacks Plaintiffs' claims by challenging the allegations in the Second Amended

Complaint ("Complaint"), thereby renewing his motion to dismiss with most, if not all, the same

arguments.  Defendant cites no facts from the record in support of his assertions, proceeding as if

the factual record in this case remains as it was a year ago when the Court denied his Rule 12

motion.  Defendant has failed to meet his Rule 56 burden, and thus summary judgment must be

denied.  See *Pollard v. Untied States*, 166 Fed. Appx. 674, 678 (4th Cir. Feb. 2, 2006 (citing

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970)).  Nevertheless, Plaintiffs demonstrate

below why each of Defendant's challenges fail and summary judgment is unwarranted.

#### A.  The Record Supports Plaintiffs Claims for Extrajudicial Killing and Attempted Extrajudicial Killing

Defendant argues that Plaintiffs' ATS and TVPA claims may not proceed because

extrajudicial killing was not recognized as violating an established norm of international law in

1984 or 1989.  Def.'s Motion. at 12, 22.  A long line of authority holds otherwise.  *See, e.g.*,

*Hilao v. Estate of Marcos*, 25 F.3d 1467, 1477 (9th Cir. 1994) (extrajudicial killings committed

in 1977 violated international law); *Chavez*, 559 F.3d at 490 (affirming jury verdict for plaintiffs

on ATS and TVPA claims involving extrajudicial killings that occurred in 1980).  The United

States Court of Appeals for the Ninth Circuit's analysis in arriving at its conclusion in *Hilao* was noted with approval by the U.S. Supreme Court. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004) (observing that the Ninth Circuit's approach to determining that extrajudicial killing violated international law norms was consistent with the guidance the U.S. Supreme Court provided in *Sosa*); *see also Enaharo v. Abubakar*, 408 F.3d 877, 884 (7th Cir. 2005) ("[The] two primary categories that the *Sosa* Court specifically recognized as violations of the law of nations [were] torture and killing."). Defendant's challenge to the ability of Plaintiffs to bring these claims as a matter of law is meritless and should be rejected.

Defendant's challenge to the factual bases underlying Plaintiffs' claims for extrajudicial killing fares no better. Defendant baldly states that the allegations in the Complaint are insufficient and asks the Court to grant unwarranted inferences in his favor. Def's Motion at 14-15. Most notably, Defendant asks the Court to infer that James Doe I and James Doe II, the brothers of Plaintiff John Doe I (collectively, "the Doe Brothers"), were accorded the right to counsel and an opportunity to confront the witnesses against him. *Id.* at 15. Defendant is not entitled to any such inference. In considering a motion for summary judgment, "the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Hunt v. Cromartie*, 526 U.S. 541 (1999)).

Compelling evidence has been developed in this case at odds with any suggestion that John Doe I and his brothers may have been accorded "the requisite judicial guarantees." Def.'s Motion at 15. Doe I and his brothers had no access to an attorney to assist them at trial. SOF ¶ 7. At the trial of the three Doe Brothers, two soldiers provided false testimony against them, after which Plaintiff Doe I was questioned by the presiding officer. *Id.* There is no evidence that

21

the Doe Brothers were provided with the opportunity to confront the witnesses against them.

Soon after their trial, the three Doe Brothers, along with approximately 80 others, were

convicted, and some, including James Doe I and James Doe II, were taken away in a truck to be

executed. *Id.* The only reasonable inference for a jury is that the Doe Brothers were not

afforded "all the judicial guarantees which are recognized as indispensible by civilized people"

and that the extrajudicial killings of James Doe I and James Doe II are actionable under the ATS.

Defendant argues that Plaintiff's *complaint* fails to allege facts supporting that Mohamed

Deria Ali ("Mohamed") and Mustafa Mohamed Deria ("Mustafa") were victims of extrajudicial

killing. But Defendant's burden on this motion is to set forth facts from *the record* showing that

he is entitled to summary judgment or establish that there are no facts by which Plaintiffs can

show that Mohamed and Mustafa were in fact the victims of extrajudicial killings. *Carolina*

*Conduit Sys., Inc. v. MasTec N. Am., Inc.*, No. 3:11CV133, 2011 WL 5042082, at *2 (E.D. Va.

Oct. 24, 2011) (quoting FED. R. CIV. P. 56(c)(1)). Yet after full discovery, Defendant has failed

to uncover, let alone present, any facts suggesting that Mohamed and Mustafa were not

summarily executed. Nor has he made any effort to establish there are no facts for a jury to find

that Mohamed and Mustafa were victims of extrajudicial killing. To the contrary, the evidence

shows that Mohamed and Mustafa were seized from their home by armed members of the

Somali military, never to be seen again. SOF ¶ Having failed to meet his burden or even

acknowledge he has a burden to meet, Defendant is not entitled to summary judgment on the

claims regarding the extrajudicial killings of Mohamed and Mustafa Deria.

Likewise, Defendant makes no attempt to show that there is no genuine dispute of

material fact regarding Plaintiff John Doe II's claim for attempted extrajudicial killing. This

argument is entirely derivative of the false premise that extrajudicial killing is not actionable

under the ATS.  Def.'s Motion at 15.  Because there can be no question that extrajudicial killing

is actionable under the ATS, Defendant cannot prevail on this argument, either.  The standard for

attempted extrajudicial killing comes from the Rome Statute of the International Criminal Court

("Rome Statute"), which the Fourth Circuit recently relied upon to determining the appropriate

*mens rea* for an aiding and abetting claim brought under the ATS and TVPA.  *See Aziz v.

Alcolac*, 658 F.3d 388, 400-01 (2011).  The standard for attempted extrajudicial killing under the

Rome Statute requires that Defendant (1) had the specific intent to commit the unlawful act; and

(2) made a substantial step towards the commission of the crime.  Rome Statute art. 23(f), July

17, 1998, 2187 U.N.T.S. 90.

Furthermore, Defendant provides no facts contradicting Plaintiff John Doe II's testimony

about his arrest, detention and the unsuccessful attempt by members of the Somali military to

execute him.  Doe II was arrested by members of the Somali military police while he was ill and

in the hospital, and was taken to a military base.  SOF ¶¶ 8.  Soon after his arrest, and without

being formally charged or tried, he was tied to other prisoners, taken outside to Malko Dur-Duro,

where the Somali military executed and buried many of its prisoners, shot and left for dead under

the bodies of executed prisoners.  *Id.*  These facts demonstrate that there are genuine issues of

material fact in dispute.  Summary judgment should be denied on this count.

### B.  Plaintiffs May Pursue Their Claims of Torture

Defendant next asks this Court to part company with every other court to consider the

issue and hold that torture was not considered a violation of any binding norm of international

law in the 1980s and therefore acts from that period are not actionable under the ATS or TVPA.

Def.'s Motion at 15-16.  In passing the TVPA, Congress clearly stated that "[o]fficial torture and

summary execution violate standards accepted by virtually every nation.  The universal

consensus condemning these practices has assumed the status of customary international law.  As

the United States Court of Appeals for the Second Circuit held in 1980, "'official torture is now

prohibited by the law of nations.' [*Filartiga v. Pena-Irala*, 630 F.2d 876, 884.]" S. Rep. 102-

249 (1991), 1991 WL 258662, at *2.

Accordingly, courts have consistently found that acts of torture committed prior to the

enactment of the TVPA, are actionable under the ATS and the TVPA.[5]  *See Chavez*, 559 F.3d at

491 (finding acts of torture occurring in 1980 and 1983 actionable); *Cabello*, 402 F.3d at 1154

(finding acts of torture and extrajudicial killing occurring in 1973 actionable); *Cabiri v. Assassie-

Gyimah*, 921 F. Supp. 1189, 1196 (S.D.N.Y. 1996) (finding acts of torture occurring from 1986

to 1991 actionable); *Xuncax v. Gramajo*, 886 F. Supp. 162, 177 (D. Mass. 1995) (stating "[t]he

universal condemnation of the use of torture was fully established prior to the events on which

the instant claims turn").

Defendant asserts that those cases applying the ATS or TVPA to conduct occurring

before the 1992 enactment of the TVPA are inconsistent with the U.S. Supreme Court's decision

in *Sosa*.  In particular, he asserts that *Cabello, Xuncax, Cabriri*, and even *Filartiga* – the seminal

ATS case upon which ATS litigation was built – were wrongly decided because they relied on

the Universal Declaration of Human Rights and/or the International Covenant on Civil and

Political Rights to determine that torture violates norms of international law.  Def's Motion at

15-16.  According to Defendant, *Sosa* instructs that the Universal Declaration and the

International Covenant do not themselves establish rules of international law.  Def.'s Motion at

16.  Thus, reasons Defendant, courts could not rely on those documents in determining that

---

[5] Defendant misrepresents the lone decision he cites as having "found" that the TVPA
cannot be applied retroactively.  In *Gonzales-Vera v. Kissinger*, No. 02-02240, 2004 WL
5584378, at *8 n.16 (D.D.C. Sept. 17, 2004), the defendant argued that the TVPA cannot be
replied retroactively, but the court *explicitly* stated that it never considered that argument.

torture is actionable under the ATS and/or TVPA.  However, *none* of the decisions criticized by

Defendant holds that the Universal Declaration and/or International Covenant themselves

establish rules of international law; those documents were merely considered by those courts,

along with a number of other sources – an approach that is entirely consistent with the U.S.

Supreme Court's guidance in *Sosa*.  *See, e.g.*, *Cabello*, 402 F.3d at 1154; *Filartiga*, 630 F.2d at

880-84, *Cabiri*, 921 F. Supp. at 1196-97; *Xuncax*, 886 F. Supp. at 176-78. .

More importantly, nowhere in *Sosa* does the U.S. Supreme Court question the lower

courts' holdings, instead expressing its approval of the manner in which the Second and Ninth

Circuit came to their respective conclusions that torture and/or extrajudicial killing violate norms

of international laws.  542 U.S. at 732.  Moreover, *Sosa* does not address the retroactive effect of

the TVPA or the ATS.  The case considered only whether an illegal detention lasting less than

one day violated any norm of well-defined international law.  542 U.S. at 738.  Because the issue

raised by Defendant was not before the *Sosa* court, it cannot dictate the result here.  Defendant's

challenge to Plaintiffs' well-established torture claim therefore fails, and summary judgment

should be denied.  SOF ¶¶ 4.  The Prohibition Against Cruel, Inhuman, or Degrading Treatment

or Punishment Has Been Incorporated into International Law

Defendant asserts that "[i]f no action existed for extrajudicial killing or torture prior to

the enactment of the TVPA, then it should not be possible to find one for the lesser and less

definable injuries resulting from cruel, inhuman or degrading treatment or punishment."  Def.'s

Motion at 16.  The fatal flaw in Defendant's logic is that, as demonstrated above, actions for

torture and extrajudicial killing *did* exist prior to the enactment of the TVPA.  Likewise, many

courts have found a cause of action for cruel, inhuman or degrading treatment or punishment

("CIDT").  *See Doe v. Qi*, 349 F. Supp. 2d 1258, 1320-1322_(N.D. Cal. 2004); *Tachiona v.*

25

*Mugabe*, 216 F. Supp. 2d 262, 266 (S.D.N.Y. 2002), *rev'd on other grounds*, 386 F.3d 205, 224

(2d Cir. 2004); *Jama v. I.N.S.*, 22 F. Supp. 2d 353, 363 (D.N.J. 1998); *see also de Sanchez v.*

*Banco Central de Nicaragua*, 770 F.2d 1385, 1397 (5th Cir. 1985) (recognizing a right not to be

subjected to cruel, inhuman or degrading punishment as incorporated into international law).

    Defendant asks the Court to ignore these cases, urging that it instead follow *Aldana v.*

*DelMonte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005), which held that a

claim for CIDT was not cognizable under the ATS.  The Eleventh Circuit's decision in *Aldana*

goes against the weight of precedent finding otherwise, and is also inconsistent with Supreme

Court precedent.  *See, e.g.*, *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1092-93 (N.D. Cal.

2008), *aff'd* 621 F.3d 1116 (9th Cir. 2010) (discussing the wide recognition of the prohibition

against CIDT in international law and by federal courts, observing that *Aldana* is contrary to U.S.

Supreme Court precedent in *Sosa*, and adopting the "more persuasive" dissent in *Aldana*.

    As the *Aldana* dissent notes, the panel's analysis of the CIDT claims consists solely of

noting that the International Covenant on Civil and Political Rights does not create obligations

enforceable in federal courts.  *Aldana v. DelMonte Fresh Produce, N.A., Inc.* 452 F.3d 1284,

1285 n.2 (11th Cir. 2006) (Barkett, J., dissenting).  That curt analysis is insufficient under *Sosa*.

*Id.*  There, the U.S. Supreme Court instructed that courts should look to "treaties, judicial

decisions, the practice of governments, and the opinions of international law scholars."  *Id.* at

1285.  An analysis of such materials makes "clear that there exists a universal, definable, and

obligatory prohibition against cruel, inhuman or degrading treatment or punishment, which is

therefore actionable under the [ATS.]"  *Id.*

For the same reasons, the Court should follow *Bowoto*, adopt the dissent's analysis in *Aldana* to find that cruel, inhuman, and degrading treatment or punishment is a valid cause of action under the ATS, and deny Defendant's summary judgment challenge.

### C. The Facts and the Law Support Plaintiffs' Claim for Arbitrary Detention

Defendant misstates the U.S. Supreme Court's holding in *Sosa* to assert that arbitrary detention is not actionable under the ATS. According to Defendant, the U.S. Supreme Court disagreed with the plaintiff's view that a general prohibition against arbitrary detention "'expresses an aspiration that exceeds any binding customary rule having the specificity we require.'" Def.'s Motion at 7. But *Sosa* holds only that "a single illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary international law so well defined as to support the creation of a federal remedy." 542 U.S. at 738. The U.S. Supreme Court also stated that a colorable claim of arbitrary detention "requires a factual basis beyond relatively brief detention in excess of positive authority." *Id.* at 737.

The required factual basis exists here. Unlike the plaintiff in *Sosa*, the Doe Plaintiffs here were tortured or otherwise mistreated after being arrested and detained with no warrant, probable cause or access to counsel. SOF ¶¶ 6-7  Doe I was imprisoned for a total of eight days in an overcrowded, windowless, unlit room, without a toilet, where he was fed nothing more than a small portion of rice once a day. SOF ¶ 6. Courts have recognized claims for arbitrary detention under similar circumstances. *See, e.g.*, *Doe v. Liu Qi*, 349 F. Supp. 2d 1258, 1326 (N.D. Cal. 2004) (finding arbitrary detention where detention lasts three or more days while being tortured); *Paul v. Avril*, 901 F. Supp. 330, 334 (S.D. Fla. 1994) (finding arbitrary detention where plaintiff held for under ten hours); *Xuncax v. Gramajo*, 886 F. Supp. 162, 170 (D. Mass. 1995 (finding arbitrary detention where detentions lasted 14 hours to two days). Defendant has failed to set

27

forth any facts or argument entitling him to summary judgment on Plaintiffs' arbitrary detention

claim, and consequently summary judgment must be denied.

### D. Crimes Against Humanity and War Crimes are Firmly Established as Violations of International Law

Without citation to any authority, Defendant only argues that because Plaintiffs have not

stated "cognizable causes of action under the ATS on their first five claims," they likewise have

not stated claims for crimes against humanity or war crimes.  Def.'s Motion at 18-19.  Defendant

must do more than that to obtain summary judgment – he must "cite to particular parts of the

record" to establish that there is no genuine dispute as to any material fact or show that the

nonmoving party cannot produce admissible evidence to support a material fact.  FED. R. CIV. P.

56(c)(1).

Moreover, crimes against humanity are "universally condemned," and there is agreement

that "universal jurisdiction exists to prosecute." *Sosa*, 542 U.S. at 762 (Breyer, J., concurring);

*see also Cabello*, 402 F.3d at 1161 (upholding a jury verdict for crimes against humanity);

*Saravia*, 348 F. Supp. 2d at 1154-57 (describing evolution of universal recognition of crimes

against humanity, beginning with the 1945 Nuremberg Charter).  Likewise, war crimes,

including carrying out "a deliberate plan . . . to massacre and exterminate . . . unarmed

noncombatant civilians . . . without cause or trial . . . are recognized in international law as

violations of the law of war," *In re Yamashita*, 327 U.S. 1, 14 (1946), and accordingly are

recognized as actionable under the ATS.  *See, e.g.*, *Kadic v. Karadz I*, 70 F.3d 232, 242-43 (2d

Cir. 1995) (finding that district court had jurisdiction under the ATS for plaintiffs claims alleging

war crimes).  Here, the record contains compelling and unrebutted evidence that war crimes and

crimes against humanity were committed by Somali armed force, with thousands of civilians,

mostly Isaaqs, being "purposefully murdered" by members of the Somali military in the one-year

period between March 1988 and March 1989, with thousands more dying during the bombing of

Hargeisa in June 1988.  SOF ¶¶ 9, 11.  Having failed to adhere to the requirements of Rule 56 or

cite any authority for his position, Defendant is not entitled to summary judgment on Plaintiffs

claims of war crimes and crimes against humanity.

## IV.   DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' SECONDARY LIABILITY CLAIM

Defendant has failed to demonstrate that "there is no genuine dispute as to any material

fact" and he is thus "entitled to judgment as a matter of law" with respect to his challenge to

Plaintiffs' secondary liability claims.  Indeed, Defendant does not cite to the record to support his

contention, nor does Defendant aver that Plaintiffs have failed to establish facts to support their

claims.  Instead, Defendant relies solely on alleged deficiencies in the Complaint.  Def.'s Motion

at 20-21.  Defendant has failed to meet his burden of "'citing to particular parts of materials in

the record'' or "'showing that the materials do not establish the  . . . presence of a genuine

dispute, or that [Plaintiffs] cannot produce admissible evidence to support the fact.'"  *Caroline*

*Conduit Sys., Inc.*, 2011 WL 5042082, at *2.

Plaintiffs' have alleged three types of secondary liability under the ATS and TVPA:

command responsibility, aiding and abetting liability and joint criminal enterprise.  Complaint,

Dkt. No. 76, Ex. 1 at ¶¶ 95-96; 104-105; 114-115; 124-125; 134-135; 143-144; 152-153.

Defendant challenges the ability of Plaintiffs' to assert these claims in the first instance.

However, Defendant's argument that secondary liability is not actionable under the ATS or

TVPA is foreclosed by the United States Court of Appeals for the Fourth Circuit's recent

decision in *Aziz v. Alcolac*, 658 F.3d 388, 396 (2011).  There, the Fourth Circuit observed that

"virtually every court to address the issue, before and after *Sosa*" has recognized "secondary

liability for violations of international law since the founding of the Republic."  *Id.* (citation and

29

quotation omitted).  Consequently, the Fourth Circuit followed "the lead of [its] sister circuits" and concluded that "aiding and abetting liability is well established under the ATS."  *Id.*

Defendant then challenges the sufficiency of Plaintiffs' *allegations* with regard to the requisite intent.  First, the *record* reflects that Defendant was in official command of the Somali Military during the period 1981 to 1987, and then again took over command during the bombing of Hargeisa in 1988, giving orders to bomb the city.  SOF ¶¶ 1-2, 4-5, 9-11.  Second, in *Aziz*, the Fourth Circuit held that "for liability to attach under the ATS for aiding and abetting a violation of international law, a defendant must provide substantial assistance with the purpose of facilitating the alleged violation."  658 F.3d at 401.  The Fourth Circuit limited this heightened *mens rea* standard to aiding and abetting liability only, not all theories of secondary liability. Indeed, no other theory of secondary liability was at issue in *Aziz.*  Thus, even if *Aziz* has any effect on Plaintiffs' aiding and abetting claims – which it does not – it has no impact on their claims brought under the theories of command responsibility or joint criminal enterprise.

More importantly, *Aziz* does not entitle Defendant to move once again to dismiss Plaintiffs' secondary liability claims.  His burden on summary judgment was to "cite to particular parts of the record" to establish that there is no genuine dispute as to any material fact or show that the nonmoving party cannot produce admissible evidence to support a material fact. FED. R. CIV. P. 56(c)(1).  By failing to even address Plaintiffs' specific claims or cite to any particular part of the record, Defendant has not met his burden and summary judgment must be denied.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant Mohamed Ali Samantar's motion for summary judgment in its entirety and enter summary judgment in favor of Plaintiffs on the statute of limitations issue.

Dated:  December 9, 2011                    Respectfully submitted,

<div style="margin-left: 40%;">

_____/s/_____

Joseph L. Decker
Virginia State Bar No. 72107
Thomas P. McLish (*pro hac vice*)
W. Randolph Teslik (*pro hac vice*)
Elizabeth Tobio (*pro hac vice*)
*Counsel for Plaintiffs Bashe Abdi Yousuf, et al.*
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC  20036
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288
E-mail:  jdecker@akingump.com

L. Kathleen Roberts (*pro hac vice*)
Andrea Evans, (*pro hac vice*)
Natasha Fain (*pro hac vice*)
*Counsel for Plaintiffs Bashe Abdi Yousuf, et al.*
The Center for Justice & Accountability
870 Market Street, Suite 682
San Francisco, CA  94102
Telephone:  (415) 544-0444
Facsimile:  (415) 544-0456

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2011 I caused a copy of the foregoing Plaintiffs'

Opposition to Defendant's Motion for Summary Judgment to be filed with the Clerk of Court

using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the

below persons:

Joseph Peter Drennan
218 North Lee Street
Third Floor
Alexandria, VA  22314
Telephone:  (703) 519-3773
Facsimile:  (703) 548-4399
Email:  joseph@josephpeterdrennan.com


Lauren A. Wetzler
United States Attorney's Office
2100 Jamieson Ave
Alexandria, VA 22314
Telephone:  (703) 299-3752
Facsimile:  (703) 299-3983
Email:  lauren.wetzler@usdoj.gov


                                                 /s/
                                 Joseph L. Decker
                                 Virginia State Bar No. 72107
                                 *Counsel for Plaintiffs Bashe Abdi Yousuf, et al.*
                                 AKIN GUMP STRAUSS HAUER & FELD LLP
                                 1333 New Hampshire Avenue, NW
                                 Washington, DC  20036
                                 Telephone:  (202) 887-4000
                                 Facsimile:  (202) 887-4288
                                 E-mail:  jdecker@akingump.com